**Martin K. STEVENS, Plaintiff,**

v.

**The COUNTY OF DUTCHESS, NEW YORK and Lawrence Quinlan, Defendants.**

No. 74 Civ. 2569.

United States District Court, S. D. New York.

Dec. 22, 1977.

Lipsig, Sullivan, Mollen & Liapakis, P. C., New York City, for plaintiff; Steven L. Hess, New York City, of counsel.

Leahey & Johnson, New York City, for defendant Lawrence Quinlan; Asher Marcus and William J. Lake, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Martin K. Stevens, initiated this action against the County of Dutchess and its sheriff, Lawrence Quinlan. He asserts five causes of action against the defendants, two of which allege violations of 42 U.S.C. § 1983, and three of which allege violations of New York law.[1] Defendant Quinlan now moves to dismiss the complaint as against him pursuant to Rule 12(b), F.R.Civ.P., for failure to state a claim upon which relief can be granted. For the reasons stated below, defendant Quinlan's motion is denied except as to count four of the complaint (malicious prosecution) as to which it is granted.

*Facts*

Plaintiff has alleged the following "facts" which must be deemed true for purposes of disposing of this motion. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Van Horn v. Lukhard,* 392 F.Supp. 384, 386 (E.D.Va. 1975). On or about May 30, 1976, the defendants, through their agents, arrested plaintiff without a warrant and without reasonable cause to believe that he committed any crime. He was "booked" on a charge of burglary and imprisoned in the Dutchess County Jail ("Jail"). The Jail was supervised in such a way that the prisoners were in a "continuous condition of fear for their safety" and this condition had prevailed at the Jail for a period of more than two years. During the entire day of June

---

1. Jurisdiction is invoked under 28 U.S.C. § 1343(3) (1970) with respect to the federal claims and under 28 U.S.C. § 1332 (1970) with respect to the state claims. Diversity exists because plaintiff is a resident of Connecticut and he is suing New York defendants.

13, and then again on June 14, at least four of plaintiff's fellow prisoners beat, battered, abused and sodomized him. As a result of these assaults, plaintiff claims that he suffered physical injury, mental and emotional distress, and severe psychological damage. On June 15, plaintiff was discharged from custody.

*Discussion*

■ To secure a dismissal of Steven's complaint, defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir. 1974). Moreover, complaints must be viewed broadly in the context of civil rights actions. *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 865 (2d Cir. 1970); *Van Horn v. Lukhard, supra,* 392 F.Supp. at 386, 386 n.1.

■ In order to state a cause of action under § 1983, plaintiff must meet two requirements. "First, he must allege that the defendants have deprived him of a right secured by 'the Constitution and laws' of the United States. Second, he must further allege that the defendants acted under 'color of state law' in infringing his constitutionally protected right." *Van Horn v. Lukhard, supra,* 392 F.Supp. at 386, *citing Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). No question is raised here as to whether the defendant was acting under color of state law, rather the controversy centers upon whether Quinlan acted in such a way as to deprive plaintiff of his constitutionally protected rights.

■ Plaintiff does not specify those constitutional rights of which he was al-

legedly deprived. Presumably he relies on his rights under the due process clause. *See, e.g., Arroyo v. Schaefer,* 548 F.2d 47 (2d Cir. 1977); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).[2] In order to violate plaintiff's rights under the due process clause, the defendant's conduct must "shock the conscience," and there must be present "circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Arroyo v. Schaefer, supra,* 548 F.2d at 49; *Williams v. Vincent, supra,* 508 F.2d at 543–44, 46.

Relying principally on the decisions in this circuit in *Williams v. Vincent, supra,* and *Johnson v. Glick, supra,* defendant argues for dismissal on the grounds that imposing liability on him for the acts of his subordinates would violate the well-established principle that *respondeat superior* does not apply in actions brought under § 1983. Defendant's argument is unpersuasive.

In *Williams v. Vincent, supra,* the Second Circuit refused to impute to the warden of a correctional facility the allegedly negligent conduct of one of his prison guards in allowing one inmate to assault another. The court held that the doctrine of *respondeat superior* simply did not apply in actions under § 1983, and consequently the action against the warden had to be dismissed. 508 F.2d at 546.[3] Similarly, in *Johnson v. Glick, supra,* the Second Circuit refused to ascribe to a warden the conduct of one of his guards who had assaulted a prisoner. 481 F.2d at 1034. Both decisions indicated, however, that if there had been an allegation of a "history of previous episodes requiring the warden to take therapeutic action," the plaintiff would have al-

---

**2.** Since plaintiff was a pretrial detainee when his constitutional rights were allegedly violated, the eighth amendment was not technically applicable to him. *Johnson v. Glick,* 481 F.2d 1028, 1032, *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Nonetheless, the protections of the due process clause are available to the plaintiff and provide equivalent

guaranties. *See Arroyo v. Schaefer,* 548 F.2d 47, 50 (2d Cir. 1977); *Johnson v. Glick, supra,* 481 F.2d at 1033.

**3.** The *Williams* court did give the plaintiff leave to amend his complaint so as to allege a factual basis for the alleged personal responsibility of the warden. 508 F.2d at 546.

leged sufficient personal responsibility on the part of the warden to state a claim against him under § 1983. *Johnson v. Glick, supra,* 481 F.2d at 1034; *accord, Williams v. Vincent, supra,* 508 F.2d at 546.

In the case at bar, plaintiff does more than allege a simple, isolated instance of negligence on the part of one jail guard and attempt to ascribe that conduct to the sheriff. Plaintiff alleges a history of incidents over a period of two years during which time the inmates of the Dutchess County facility were constantly subjected to violent attacks by their fellow prisoners. Consequently this case falls within the category of cases where the warden may be held *personally* responsible for his failure to take "therapeutic action" in response to a history of previous episodes of violence. *Johnson v. Glick, supra,* 481 F.2d at 1034. If Sheriff Quinlan is held liable in damages it will be for his own misconduct, not for the misconduct of others which is imputed to him. *See Wright v. McMann,* 460 F.2d 126 (2d Cir. 1972).

Defendant argues further that even if he can be said, in some sense, to be personally responsible for allowing the attack upon the plaintiff to take place, his conduct constitutes no more than simple negligence and, therefore, does not state a cause of action under § 1983. *See United States ex rel. Hyde v. McGinnis, supra.* As we read plaintiff's complaint, however, he indicates circumstances which, if established, would support a finding of deliberate indifference on the part of the sheriff to the legitimate concern of jail inmates for their personal safety. *Cf. Bishop v. Stoneman,* 508 F.2d 1224 (2d Cir. 1974) (*per curiam* ) (legitimate medical needs). This "callous indifference to the predictable consequences of substandard prison conditions" is sufficient to infer an official intent to inflict unwarranted harm in violation of plaintiff's constitutional rights. *See United States ex rel. Miller v. Twomey,* 479 F.2d 701, 721 (7th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d·102 (1974).

In *Williams v. Vincent, supra,* the Second Circuit indicated that a history of acts on the part of a prison guard in allowing one prisoner to assault another would be sufficiently indicative of "deliberate indifference" to the personal safety of the prisoners to reach the level of a constitutional deprivation cognizable under § 1983. In the analogous context of medical care, the Second Circuit reversed a lower court's dismissal of a complaint where the complaint had alleged a series of incidents of alleged malpractice. *Bishop v. Stoneman, supra.* The court reasoned that a series of such incidents "closely related in time . . . may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners." *Id.* at 1226. Since such deliberate indifference to legitimate medical needs stated a cause of action under § 1983, *see Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), the court held that the plaintiffs were entitled to try the merits of their claims. Similarly in the instant situation, if plaintiff can establish a series of prisoner assaults sufficient to indicate a pattern of deliberate indifference on the part of the sheriff to the personal safety of individual prisoners, he has made out a claim of constitutional dimension which is actionable under § 1983.

Just recently, in *Gilliard v. Oswald,* 552 F.2d 456 (2d Cir. 1977), the Court of Appeals implicitly recognized the viability of a § 1983 action based upon a prison official's failure to respond to a *series* of prisoner assaults on other prisoners. In *Gilliard,* the Superintendent of the prison responded to a pattern of inmate attacks by summarily transferring certain inmates deemed to be "disruptive" or "potentially disruptive" to very restrictive, special housing units pending completion of his investigation of the incidents. In rejecting the claim made by several transferees that their transfer without the benefit of a hearing denied them their constitutional right to due process, Judge Moore stated:

"A hypothetical, but not fanciful, case might well have arisen had the Superintendent prematurely ended his investigation and an inmate been seriously injured as a result: The injured inmate could well have argued liability for failure to

do the very acts which the Superintendent carried out here." *Id.* at 459.

Other circuits have held that subjecting prisoners to conditions in which they are continuously threatened with sexual abuse and physical assault constitutes a violation of constitutional rights which is actionable under § 1983. See *Little v. Walker,* 552 F.2d 193 (7th Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3070 (U.S. Aug. 23, 1977) (No. 77–121); *Woodhous v. Virginia,* 487 F.2d 889 (4th Cir. 1973); *Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir. 1971). *See also Parker v. McKeithen,* 488 F.2d 553 (5th Cir. 1974).[4] In *Woodhous v. Virginia, supra,* the Court of Appeals for the Fourth Circuit stated:

> "While occasional isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, *Penn v. Oliver,* 351 F.Supp. 1292 (E.D.Va.1972), confinement in a prison where violence and terror reign is actionable. A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates  .  .  .."

*Id.* at 890; *accord, Fore v. Godwin,* 407 F.Supp. 1145 (E.D.Va.1976); *Van Horn v. Lukhard, supra; Penn v. Oliver,* 351 F.Supp. 1292 (E.D.Va.1972).

In *Little v. Walker, supra,* the Court of Appeals for the Seventh Circuit was faced with a situation where the plaintiff had "paint[ed] an ugly picture of constant physical attacks and sexual assaults by other inmates." *Id.* at 194. "The complaint alleged that plaintiff and fellow inmates lived in constant and imminent fear of physical violence and sexual assaults." *Id.*

at 195. In reversing the lower court's dismissal of the complaint, the court stated:

> "Violent attacks and sexual assaults by inmates upon the plaintiff while in protective segregation are manifestly 'inconsistent with contemporary standards of decency.' 'Deliberate indifference' to these happenings constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. Moreover, in the highly publicized landmark case of *Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir. 1971), it was held that under the Eighth Amendment prisoners are entitled to protection from the assaults of other prisoners."

*Id.* at 197 (citations omitted).

Thus, the *Walker* court held that allegations similar to those made in the case at bar stated a claim of constitutional deprivation cognizable under § 1983.

If plaintiff can establish that the conditions at the Jail were such that prisoners were subjected to a reign of terror of inmate violence, *see Little v. Walker, supra; Woodhous v. Virginia, supra,* then the sheriff's deliberate indifference to the legitimate concerns of the prisoners for their personal safety, as indicated by his failure to take any "therapeutic action" deprives plaintiff of his rights under the due process clause, and hence states a cause of action under § 1983. *See Williams v. Vincent, supra; Johnson v. Glick, supra; Wright v. McMann, supra.* Consequently defendant's motion to dismiss as to plaintiff's federal claims is denied.[5]

### State Claims

█ Counts 1 and 2 of the complaint basically allege gross negligence on the part

---

4. In *Parker v. McKeithen,* 488 F.2d 553 (5th Cir. 1974), the court rejected the rule that " 'more than an isolated incident of negligent failure to protect' " is required to state a claim under § 1983. *Id.* at 556. The court's opinion was based on the rule within the circuit that negligence can support a cause of action under § 1983. *Id.* That rule has been expressly rejected by this circuit. *See Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974); *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864 (2d Cir. 1970).

5. Although count 3 of the complaint speaks only in terms of negligence, which does not make out a cause of action under § 1983, *see United States ex rel. Hyde v. McGinnis,* 429 F.2d 864 (2d Cir. 1970), we read count 3 together with count 5 of the complaint as alleging deliberate indifference on the part of the sheriff to the legitimate concerns of the prisoners for their personal safety. *See Williams v. Vincent,* 508 F.2d 541, 544 n.7 (2d Cir. 1974). As indicated in this opinion, that allegation of deliberate indifference is sufficient to state a cause of action under § 1983.

of the sheriff in maintaining and supervising the jail in violation of his duty of care under state law. *See Gunther v. Johnson,* 36 A.D. 437, 55 N.Y.S. 869 (2d Dept. 1899). Defendant argues that to sustain this claim against him would be to hold him liable for the acts of his deputies in violation of the settled New York rule that *respondeat superior* is inapplicable vis-a-vis deputy sheriffs acting in their police capacity. Defendant's contention is well-answered in *Schnitzer v. County of Erie,* 8 Misc.2d 989, 168 N.Y.S.2d 217, 218 (Sup.Ct. Erie County 1957). In responding to the same argument made by defendant here, the court stated:

"Among the duties of a Sheriff is the custody of the jail and the prisoners confined therein. By this allegation, the plaintiff accuses the Sheriff himself of negligence. This is not an allegation of negligence on the part of a subordinate or any other person charged with the duty of safekeeping a prisoner. For this reason the question of imputation of negligence by an appointee of the Sheriff does not arise. . . . On this motion the allegation of negligence on the part of the Sheriff himself must be given credibility. Upon trial it may appear that the Sheriff in no wise was negligent and that the allegation of negligence on the part of the defendant is wholly without substance. This will be determined upon the trial."

*Id.* at 990, 168 N.Y.S.2d at 219 (citations omitted). *See LaVigne v. Allen,* 36 A.D.2d 981, 321 N.Y.S.2d 179 (3rd Dept. 1971). For the same reasons, defendant's motion to dismiss as to counts 1 and 2 of the complaint is denied.

■ Defendant's motion to dismiss as to count 4 of the complaint must, however, be granted. In court 4, plaintiff alleges that "agents" of the sheriff arrested plaintiff without a warrant and without reasonable cause to believe that he committed any crime. No allegation of personal responsibility on the part of the sheriff is made. In *Paolucci v. County of Dutchess,* 67 Misc.2d 479, 324 N.Y.S.2d 452 (Sup.Ct. Dutchess County 1971), the court dealt explicitly with an almost identical claim. In dismissing the complaint, the court stated:

"The papers before the Court make clear that the acts complained of were not the personal acts of the defendant Sheriff, but were the acts of persons acting for him or under his control and direction. It has been said that personnel of the Sheriff's office while engaged upon the performance of police duties are not the agents of the Sheriff and that the relationship of principal and agent does not exist. It follows that this claim against defendant Sheriff must also fail."

*Id.* at 480, 324 N.Y.S.2d at 453 (citations omitted). *See Foyster v. Tutuska,* 25 A.D.2d 940, 270 N.Y.S.2d 535 (4th Dept. 1966); *Isereau v. Stone,* 3 A.D.2d 243, 160 N.Y.S.2d 336 (4th Dept. 1947). Similarly in the instant case, plaintiff's failure to allege any personal responsibility on the part of the sheriff is fatal to his claim.

Accordingly, defendant's motion to dismiss is denied, except as to count 4 of the complaint (malicious prosecution) as to which it is granted.

IT IS SO ORDERED.